# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

**FILED**

NOV 28 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

V.



CR17 0592 WHA

DONALD MACCORD and SHANNON DOYLE,

DEFENDANT(S).

## INDICTMENT

18 U.S.C. § 1349 - Conspiracy to Commit Wire Fraud;
18 U.S.C. § 1001(a)(3) - False Writings to a Government Agency;
18 U.S.C. § 1512(c)(2) - Obstruction of Official Proceedings;
18 U.S.C. § 1519 - Destruction, Alteration, or Falsification of Records in Federal Investigations;
18 U.S.C. § 2 - Aiding and Abetting;
18 U.S.C. §§ 981(a)(1)(C), 982 & 28 U.S.C. § 2461(c) - Criminal Forfeiture

A true bill.

_____
Foreman

Filed in open court this _28th_ day of
_November 2017_.

_____
Clerk

**NO BAIL WARRANT** for each def.

Bail, $ _____

SALLIE KIM
United States Magistrate Judge

AO 257 (Rev. 6/78)

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT  ☐ SUPERSEDING

**OFFENSE CHARGED**

18 U.S.C. § 1349 – Conspiracy; 18 U.S.C. § 1001(a)(3) – False Writings to a Government Agency; 18 U.S.C. § 1512(c)(2) – Obstruction; 18 U.S.C. § 1519 – Destruction, Alteration, or Falsification of Records; 18 U.S.C. § 2 – Aiding and Abetting; 18 U.S.C. §§ 981(a)(1)(C), 982 & 28 U.S.C. § 2461(c) – Criminal Forfeiture

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: See attached

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

UNDER SEAL

**DEFENDANT - U.S**
▶ Donald MacCord

**DISTRICT COURT NUMBER**
CR17 - 0592 WHA

**DEFENDANT**

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)
Federal Bureau of Investigation; SEC-OIG

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. ATTORNEY   ☐ DEFENSE
SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on this form   BRIAN STRETCH
☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   Benjamin Kingsley

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

FILED
NOV 28 2017
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction  } ☐ Federal  ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☐ No   } If "Yes" give date filed

DATE OF ARREST ▶ Month/Day/Year
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT   Bail Amount: no bail

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:   Before Judge:

Comments:

PENALTY SHEET ATTACHMENT

Count One:

    18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud

    Maximum penalties:  20 years of imprisonment (18 U.S.C. §§ 1343, 1349)
                                   $250,000 fine (18 U.S.C. § 3571(b)(3))
                                   3 years of supervised release (18 U.S.C. § 3583(b)(2))
                                   $100 special assessment (18 U.S.C. § 3013)

Counts Two and Three:

    18 U.S.C. § 1001(a)(3) – False Writings to a Government Agency

    Maximum penalties:  5 years of imprisonment (18 U.S.C. § 1001)
                                   $250,000 fine (18 U.S.C. § 3571(b)(3))
                                   3 years of supervised release (18 U.S.C. § 3583(b)(2))
                                   $100 special assessment (18 U.S.C. § 3013)

Counts Four through Six:

    18 U.S.C. § 1512(c)(2) – Obstruction of Official Proceedings

    Maximum penalties:  20 years of imprisonment (18 U.S.C. § 1512(c))
                                     $250,000 fine (18 U.S.C. § 3571(b)(3))
                                   3 years of supervised release (18 U.S.C. § 3583(b)(2))
                                   $100 special assessment (18 U.S.C. § 3013)

Count Seven:

    18 U.S.C. § 1519 – Destruction, Alteration, or Falsification of Records in Federal Investigations

    Maximum penalties:  20 years of imprisonment (18 U.S.C. § 1519)
                                   $250,000 fine (18 U.S.C. § 3571(b)(3))
                                   3 years of supervised release (18 U.S.C. § 3583(b)(2))
                                   $100 special assessment (18 U.S.C. § 3013)

CR17 0592 WHA

FILED
NOV 28 2017
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

AO 257 (Rev. 6/78)

### DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
☐ SUPERSEDING

---- OFFENSE CHARGED ----

18 U.S.C. § 1349 – Conspiracy; 18 U.S.C. § 1001(a)(3) – False Writings to a Government Agency; 18 U.S.C. § 1512(c)(2) – Obstruction; 18 U.S.C. § 1519 – Destruction, Alteration, or Falsification of Records; 18 U.S.C. § 2 – Aiding and Abetting; 18 U.S.C. §§ 981(a)(1)(C), 982 & 28 U.S.C. § 2461(c) – Criminal Forfeiture

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY:  See attached

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

FILED
NOV 28 2017
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DEFENDANT - U.S
▶ Shannon Doyle

DISTRICT COURT NUMBER
CR 17  0592   WHA

---- PROCEEDING ----

Name of Complaintant Agency, or Person (& Title, if any)
Federal Bureau of Investigation; SEC-OIG

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. ATTORNEY   ☐ DEFENSE
  SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
  MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form   BRIAN STRETCH
☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   Benjamin Kingsley

---- DEFENDANT ----

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction        ☐ Federal   ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes  ☐ No   If "Yes" give date filed

DATE OF ARREST ▶   Month/Day/Year
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

---- ADDITIONAL INFORMATION OR COMMENTS ----

PROCESS:
☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT        Bail Amount: no bail
If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance
Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:            Before Judge:

Comments:

PENALTY SHEET ATTACHMENT

CR17    0592 WHA

Count One:

    18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud

    Maximum penalties:   20 years of imprisonment (18 U.S.C. §§ 1343, 1349)
                                  $250,000 fine (18 U.S.C. § 3571(b)(3))
                                  3 years of supervised release (18 U.S.C. § 3583(b)(2))
                                  $100 special assessment (18 U.S.C. § 3013)

Count Six:

    18 U.S.C. § 1512(c)(2) – Obstruction of Official Proceedings

    Maximum penalties:   20 years of imprisonment (18 U.S.C. § 1512(c))
                                      $250,000 fine (18 U.S.C. § 3571(b)(3))
                                  3 years of supervised release (18 U.S.C. § 3583(b)(2))
                                  $100 special assessment (18 U.S.C. § 3013)

FILED

NOV 28 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

BRIAN J. STRETCH (CABN 163973)
United States Attorney

**FILED**
NOV 28 2017
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,

  Plaintiff,

  v.

DONALD MACCORD and
SHANNON DOYLE,

  Defendants.

CASE NO. CR17 0592

VIOLATIONS: 18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud; 18 U.S.C. § 1001(a)(3) – False Writings to a Government Agency; 18 U.S.C. § 1512(c)(2) – Obstruction of Official Proceedings; 18 U.S.C. § 1519 – Destruction, Alteration, or Falsification of Records in Federal Investigations; 18 U.S.C. § 2 – Aiding and Abetting; 18 U.S.C. §§ 981(a)(1)(C), 982 & 28 U.S.C. § 2461(c) – Criminal Forfeiture

SAN FRANCISCO VENUE

INDICTMENT

The Grand Jury charges:

<u>Introductory Allegations</u>

At all times relevant to this Indictment:

1. Defendant Donald MACCORD resided, variously, in the State of Washington, the State of California, and Washington, D.C.

2. Defendant Shannon DOYLE resided, variously, in the State of Washington and the State of Maryland.

3. Bank of America and EagleBank were financial institutions, as that term is defined in

INDICTMENT

Title 31, United States Code, Section 5312, the deposits of which were insured by the Federal Deposit Insurance Corporation.

4. Digi Outdoor Media, Inc. ("Digi"), was a Nevada corporation with operations in the State of Washington and Washington, D.C. Digi was in the business of obtaining leases for and installing indoor and outdoor digital advertising signs, primarily in the Washington, D.C., area. Digi maintained various bank accounts, including accounts at Bank of America and EagleBank. For most of the relevant time period, MACCORD was the CEO of Digi and DOYLE was the CFO, and MACCORD and DOYLE controlled the Digi bank accounts. In August 2014, Digi merged with a company called "Placer Creek Mining Company" ("Placer Creek"). The prior shareholders and noteholders of both Digi and Placer Creek became shareholders and noteholders of the new Digi entity.

5. Digi's business model was based on it entering into lease agreements, with landlords or property owners in the Washington, D.C., area, that permitted Digi to build and install digital advertising signs on real property. Its business model also required that local governments, including the government of Washington, D.C., either actively approve or, at the very least, not prevent or interfere with the installation of the signs. With leases and no restrictions imposed by local governments, Digi could install signs and sell advertising space on the signs, generating revenue for the business. Without leases or with restrictions imposed by local governments, Digi would not be able to generate revenue.

6. Signworks, LLC ("Signworks"), was a State of Washington corporation purportedly in the business of constructing outdoor signage. Signworks was controlled by DOYLE. Signworks maintained a Bank of America account ending in -8983. DOYLE had sole signature authority on that account.

7. The United States Securities and Exchange Commission ("SEC") was an independent agency of the United States. The SEC regulated the securities industry and enforced various federal securities laws. The SEC's Division of Enforcement, among other things, possessed authority under federal law to investigate possible violations of federal securities laws and regulations and brought administrative and civil actions to enforce those laws and regulations. The San Francisco Regional Office ("SFRO") of the SEC was located in San Francisco, California. On or about May 14, 2015, the SEC issued a formal order directing the investigation of Digi by attorneys of the SFRO.

INDICTMENT                                   2

8.   EDGAR was an electronic filing system maintained by the SEC for companies to file registration statements, 10-Ks, 10-Qs, and 8-Ks (collectively, "public filings"). Public filings submitted to EDGAR were available to anyone with access to the Internet and remained available indefinitely.

9.   The Financial Industry Regulatory Authority ("FINRA") was a non-governmental organization that regulated member brokerage firms and exchange markets.

10.   Spencer Edwards, Inc. ("Spencer Edwards"), was an investment advisor firm registered as a broker-dealer with the SEC and FINRA. Beginning in or about late 2013, Digi retained Spencer Edwards to raise funds for Digi via a so-called "private placement offering" to investors.

11.   Branded Cities Network, LLC ("Branded Cities"), was an advertising business. Between in or about July 2014 to in or about March 2015, Digi entered into a series of letters of intent and agreements with Branded Cities regarding indoor and outdoor digital advertising signs to be placed on buildings in the Washington, D.C., area.

12.   Hartley Moore Accountancy Corp. ("Hartley Moore") was a public accounting firm. Digi retained Hartley Moore to audit Digi's financial statements covering 2012 to 2014.

13.   Dropbox, Inc. ("Dropbox"), was a company headquartered in San Francisco, California, that offered, among other things, cloud storage and file synchronization. Through Dropbox, users could remotely share digital folders and files.

## The Conspiracy and Scheme to Defraud

14.   Beginning at a date unknown to the grand jury, but no later than December 2013, and continuing through a date unknown to the grand jury, but to at least April 2017, MACCORD and DOYLE knowingly devised, intended to devise, and carried out a conspiracy and scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omissions and concealment of material facts with a duty to disclose.

As part of the conspiracy and scheme to defraud:

15.   MACCORD and DOYLE raised money for Digi. They did this in several ways, including by soliciting investments in Digi, borrowing money from Placer Creek, and merging with Placer Creek. MACCORD and DOYLE solicited investments both directly and through other entities

INDICTMENT                                                3

and individuals, including Spencer Edwards. Investors received both shares and convertible promissory notes in Digi. Money raised by MACCORD and DOYLE, directly or indirectly, from each source, was deposited in Digi's bank accounts, including its Bank of America account ending in -3962.

16. In order to induce investors to invest money, MACCORD and DOYLE made various misrepresentations to potential investors. These included misrepresentations about the number of leases into which Digi had formally entered or had negotiated with landlords and was prepared to enter, misrepresentations about the number of sites "committed" for sign installation, and misrepresentations that it had secured or would secure the ability to install signs at or around the entrances and exits of D.C. Metrorail stations. They also included misrepresentations about how long it would take for digital advertising signs to become operational at lease locations, whether regulatory hurdles for the project had been overcome, and how long it would take for the investment principal to be returned and for investors to see profits from their investment. Furthermore, MACCORD and DOYLE included misrepresentations that Digi funds, including those from investors, would be used to pay for construction, installation, and maintenance of signs. MACCORD and DOYLE omitted to tell investors that a substantial portion of their funds would be used for MACCORD's and DOYLE's personal benefit. As a result of these and other misrepresentations and omissions, investors invested with Digi.

17. MACCORD and DOYLE represented to investors, shareholders, and others that Digi planned to go public to give liquidity to shareholders. To further this plan to go public and continue to entice investors, on February 13, 2015, MACCORD and DOYLE caused Digi to file an S-1 registration statement ("S-1") with the SEC on the EDGAR system. The S-1 registered for sale the shares of many individuals who had invested with Digi, including those who had invested through the Spencer Edwards offering. If allowed to go effective, the S-1 would permit the registered shareholders to sell their shares on a public marketplace. MACCORD and DOYLE caused the S-1 to include various misrepresentations, including overstating the number of leases into which Digi had entered at that time and the number of sign locations for which Digi had the right to install signs, and omitting to disclose as "related party transactions" under 17 C.F.R. § 229.404, despite a duty to do so, the payments from Digi to Signworks described in Paragraph 21 below. They did so to make Digi shares more attractive to potential buyers, to conceal the true number of leases into which Digi had entered, and to conceal the

INDICTMENT                                      4

conversion of investor funds, via Signworks, for personal use.

18. MACCORD and DOYLE sought a joint venture with Branded Cities in which Branded Cities would provide capital to Digi to construct both indoor and outdoor signs in the Washington, D.C., area, and would represent Digi in selling advertising space on signs once constructed. In order to induce Branded Cities to enter into such an agreement, MACCORD falsely represented that Digi had entered into leases providing it with the right to install 125 signs on different buildings and property in the Washington, D.C., area. In July 2014, in response to requests from Branded Cities to show actual signed lease agreements that supported MACCORD's representations about the number of leases, MACCORD shared what appeared to be authentic, executed leases via Dropbox. Of the purportedly authentic, executed leases provided to Branded Cities, almost all were false and included forged signatures of counterparties. Based on these representations and others, Digi and Branded Cities entered into separate agreements covering indoor and outdoor signs.

19. MACCORD and DOYLE caused Digi to retain Spencer Edwards in late 2013 to raise funds from investors. The fundraising by Spencer Edwards continued into 2014. MACCORD and DOYLE misrepresented the number of executed leases to Spencer Edwards. In July 2014, as part of its regulatory oversight role, FINRA contacted Spencer Edwards regarding its work for Digi. In September 2014, FINRA requested executed leases to support claims Digi had made about the number of executed leases. As a result, a representative of Spencer Edwards asked MACCORD for executed leases. MACCORD informed that representative that he would provide leases. In September 2014 and October 2014, MACCORD shared what appeared to be authentic, executed leases via Dropbox. Of the purportedly authentic, executed leases provided to Spencer Edwards, almost all were false and included forged signatures of counterparties. Spencer Edwards then provided at least three false leases to FINRA.

20. MACCORD and DOYLE caused Digi to retain Hartley Moore in 2014 to audit Digi's financial records in preparation for the S-1 and following a comment letter from the SEC on the S-1. In May 2015, a representative of Hartley Moore asked MACCORD for copies of executed leases. In response, MACCORD shared with Hartley Moore via Dropbox a small number of executed leases. MACCORD further allowed a representative of Hartley Moore to view hard copies of additional

INDICTMENT 5

purportedly authentic, executed leases in Digi's attorney's office, but would not permit any leases to be removed from the office. Of the leases shared at the attorney's office, almost all were false and included forged signatures of counterparties. As part of his concealment of his ongoing fraud, when Hartley Moore requested permission to contact landlords and verify the leases, MACCORD instructed Hartley Moore to stop working on the audit.

21. MACCORD and DOYLE, as officers of Digi, fraudulently transferred funds from Digi's bank accounts to Signworks' bank accounts. MACCORD and DOYLE had control of the bank accounts of Digi and the ability to initiate payments on invoices for work done by Digi's vendors. MACCORD and DOYLE created false invoices from Signworks to Digi, purportedly billing Digi for Signworks' work installing signs. Some of these invoices were for work purportedly done on properties for which Digi had never entered into genuine lease agreements. DOYLE then paid these false invoices using Digi funds that included investor funds. DOYLE made the payments from Digi's bank accounts to Signworks' Bank of America account ending in -8983. The payments to Signworks from Digi began in approximately November 2013 and continued until approximately March 2017.

22. Once Digi's funds were in Signworks' bank account, MACCORD and DOYLE misappropriated a large percentage of the money for their own uses. In so doing, MACCORD and DOYLE converted Digi funds into their own personal funds.

23. MACCORD and DOYLE concealed and hid their acts from investors, other Digi board members, Digi shareholders, various business partners, and regulatory agencies (including local regulators in the Washington, D.C., area, the SEC, and FINRA). Specifically, MACCORD and DOYLE omitted to inform the shareholders of Digi, for which they served as fiduciaries, that they had fraudulently initiated payments to an entity that they controlled and they misappropriated those funds for themselves. They further concealed and hid, and caused to be concealed and hidden, the acts done and the purpose of the acts done in furtherance of the scheme. MACCORD and DOYLE did so, in part, to maintain their ability to continue to raise money from new investors, continue to fraudulently extract money from Digi via Signworks, continue to attempt to register Digi's shares for sale on public securities exchanges, and continue to benefit from their roles as CEO and CFO, respectively, of Digi. Omissions and concealment included, but were not limited to:

INDICTMENT                              6

(a) creating falsified lease documents and forging signatures on these lease documents, and then providing these falsified and forged documents to Branded Cities, Spencer Edwards, FINRA (indirectly, through Spencer Edwards), Hartley Moore, and the SEC;

(b) deleting files from Dropbox folders shared with third parties, including Branded Cities and Spencer Edwards, after discovering that the SEC was investigating Digi;

(c) initiating bank transactions from the accounts of Digi to Signworks as if they were authorized by MACCORD's and DOYLE's positions as officers, thus misrepresenting to the originating and receiving banks that these were authorized and lawful transactions, when they were in fact not;

(d) failing to inform the shareholders and other board members that they had fraudulently obtained and converted Digi funds, by, among other things, transferring funds to Signworks;

(e) in the S-1, falsely stating the actual number of leases into which Digi had entered and the actual number of locations onto which Digi was authorized to install signs, and failing to disclose, despite a duty to do so, the related party transactions with Signworks;

(f) concealing their diversion of funds for personal benefit through Signworks, and creating falsified invoices from Signworks to Digi for non-existent leases and non-existent work to create the false appearance that the payments to Signworks were legitimate;

(g) concealing their control of Signworks by falsely informing others, including the SEC in sworn testimony, that Z.H. or C.S. controlled or owned Signworks, that L.W. was involved in creating the false invoices, and that C.S. approved the invoices and payments to MACCORD;

(h) in the case of DOYLE, diverting money from Signworks into other entities that DOYLE controlled, to conceal the destination of the funds; and

(i) testifying falsely, evasively, and non-responsively to the SEC about the scheme, with the intent to conceal and hide it, permit its continued operation, and prevent it from being uncovered, including: in MACCORD's case, in San Francisco, California, in a proceeding of the SEC SFRO, on February 29, 2016, and May 4, 2016, after which MACCORD and DOYLE continued to divert and use Digi funds through Signworks, and in the case of both MACCORD and DOYLE, in Seattle, Washington, in a proceeding of the SEC SFRO, on April 24, 2017.

INDICTMENT                                    7

1  COUNT ONE:              (18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud)

2      24.    Paragraphs 1 through 23 of this Indictment are re-alleged and incorporated as if fully set
3  forth here.

4      25.    Beginning no later than December 2013, and continuing through at least April 2017, in
5  the Northern District of California and elsewhere, the defendants,

6                              DONALD MACCORD and
7                              SHANNON DOYLE,

8  did knowingly conspire to devise and intend to devise a scheme and artifice to defraud as to a material
9  matter, and to obtain money and property by means of materially false and fraudulent pretenses,
10 representations, and promises, and by omissions and concealment of material facts with a duty to
11 disclose, and, for the purpose of executing such scheme and artifice to defraud, to transmit and cause the
12 transmission of wire communications in interstate commerce, in violation of Title 18, United States
13 Code, Section 1343.

14      All in violation of Title 18, United States Code, Section 1349.

15 COUNT TWO:              (18 U.S.C. §§ 1001(a)(3) and 2 – False Writings to a Government Agency and
16                          Aiding and Abetting)

17     26.    Paragraphs 1 through 23 of this Indictment are re-alleged and incorporated as if fully set
18 forth here.

19     27.    In or about June 2015, in the Northern District of California and elsewhere, the
20 defendant,

21                              DONALD MACCORD,

22 did willfully and knowingly make and use a material false, fictitious, and fraudulent document knowing
23 the same to contain a material false, fictitious, and fraudulent statement and entry, in a matter within the
24 jurisdiction of the executive branch of the Government of the United States, by producing to the SEC a
25 document purporting to be an executed lease agreement between Digi and "Hines Global REIT 55 M
26 Street LLC" for digital signs on 55 M Street, SE, Washington, D.C., with attachments, which contained
27 materially false, fictitious, and fraudulent statements and entries, including that: (a) the lease had been

28

INDICTMENT                                           8

agreed to by the lessor; (b) the lessor had authority to lease all of the spaces displayed in the exhibits; and (c) these lease had been signed by M.S.

All in violation of Title 18, United States Code, Sections 1001(a)(3) and 2.

COUNT THREE:   (18 U.S.C. §§ 1001(a)(3) and 2 – False Writings to a Government Agency and Aiding and Abetting)

28.   Paragraphs 1 through 23 of this Indictment are re-alleged and incorporated as if fully set forth here.

29.   In or about June 2015, in the Northern District of California and elsewhere, the defendant,

DONALD MACCORD,

did willfully and knowingly make and use a material false, fictitious, and fraudulent document knowing the same to contain a material false, fictitious, and fraudulent statement and entry, in a matter within the jurisdiction of the executive branch of the Government of the United States, by producing to the SEC a document purporting to be an executed lease agreement between Digi and "1001 Connecticut LLC/[C.G.]" for digital signs on 1001 Connecticut Avenue, NW, Washington, D.C., with attachments, which contained materially false, fictitious, and fraudulent statements and entries, including that: (a) the lease had been agreed to by the lessor; (b) the lessor had authority to lease all of the spaces displayed in the exhibits; and (c) the lease had been signed by C.G.

All in violation of Title 18, United States Code, Sections 1001(a)(3) and 2.

COUNT FOUR:   (18 U.S.C. § 1512(c)(2) – Obstruction of Official Proceedings)

30.   Paragraphs 1 through 23 of this Indictment are re-alleged and incorporated as if fully set forth here.

31.   On or about February 29, 2016, in the Northern District of California and elsewhere, the defendant,

DONALD MACCORD,

willfully and knowingly corruptly influenced, obstructed, and impeded, and aided and abetted others to corruptly influence, obstruct, and impede, the due and proper administration of the law under which an official proceeding was being had and contemplated before a department and agency of the United

INDICTMENT                                              9

States, namely, the SEC and its investigation into Digi, in violation of Title 18, United States Code, Section 1512(c)(2).

COUNT FIVE:          (18 U.S.C. § 1512(c)(2) – Obstruction of Official Proceedings)

32.  Paragraphs 1 through 23 of this Indictment are re-alleged and incorporated as if fully set forth here.

33.  On or about May 4, 2016, in the Northern District of California and elsewhere, the defendant,

DONALD MACCORD,

willfully and knowingly corruptly influenced, obstructed, and impeded, and aided and abetted others to corruptly influence, obstruct, and impede, the due and proper administration of the law under which an official proceeding was being had and contemplated before a department and agency of the United States, namely, the SEC and its investigation into Digi, in violation of Title 18, United States Code, Section 1512(c)(2).

COUNT SIX:          (18 U.S.C. §§ 1512(c)(2) and 2 – Obstruction of Official Proceedings)

34.  Paragraphs 1 through 23 of this Indictment are re-alleged and incorporated as if fully set forth here.

35.  On or about April 24, 2017, in the Northern District of California and elsewhere, the defendants,

DONALD MACCORD and
SHANNON DOYLE,

willfully and knowingly corruptly influenced, obstructed, and impeded, and aided and abetted others to corruptly influence, obstruct, and impede, the due and proper administration of the law under which an official proceeding was being had and contemplated before a department and agency of the United States, namely, the SEC and its investigation into Digi, in violation of Title 18, United States Code, Section 1512(c)(2).

COUNT SEVEN:     (18 U.S.C. § 1519 – Destruction, Alteration, or Falsification of Records in Federal Investigations)

36.  Paragraphs 1 through 23 of this Indictment are re-alleged and incorporated as if fully set forth here.

INDICTMENT                                                      10

37.     On or about May 15, 2015, in the Northern District of California and elsewhere, the defendant,

DONALD MACCORD,

knowingly altered, destroyed, mutilated, concealed, covered up, falsified, and made a false entry in a record, document, and tangible object with the intent to impede, obstruct, and influence an investigation and the proper administration of a matter, and in contemplation of and relation to such a matter and case, within the jurisdiction of a department and agency of the United States, namely, the SEC and its investigation into Digi.

38.     Specifically, on or about May 14, 2015, Digi received a subpoena for documents from the SEC. On or about May 15, 2015, MACCORD deleted false and forged leases from a Dropbox folder to which Spencer Edwards had access.

All in violation of Title 18, United States Code, Section 1519.

FORFEITURE ALLEGATION:     (18 U.S.C. §§ 981(a)(1)(C), 982(a), & 28 U.S.C. § 2461(c) – Criminal Forfeiture)

39.     All of the allegations contained in this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C) and 982(a), and Title 28, United States Code, Section 2461(c).

40.     Upon a conviction for the offenses alleged in Counts One and Four through Six of this Indictment, the defendants,
DONALD MACCORD and
SHANNON DOYLE,
shall forfeit to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2), and 28 U.S.C. § 2461(c) all property constituting, and derived from, proceeds the defendants obtained directly and indirectly as the result of those violations, including but not limited to a forfeiture money judgment.

41.     If any of the aforementioned property, as a result of any act or omission of the defendants –

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third person;

INDICTMENT                                          11

c.     has been placed beyond the jurisdiction of the Court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property that cannot be divided without difficulty;

any and all interest the defendants have in other property shall be vested in the United States and forfeited to the United States pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

All in violation of Title 18, United States Code, Sections 981(a)(1)(C) and 982(a); Title 28, United States Code, Section 2461(c); and Rule 32.2 of the Federal Rules of Criminal Procedure.

DATED: 11/28/17              A TRUE BILL

/s/ FOREPERSON

BRIAN J. STRETCH
United States Attorney

/s/
JOHN H. HEMANN
Deputy Chief, Criminal Division

(Approved as to form: /s/ )
                       AUSA KINGSLEY

INDICTMENT            12